UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTRA F. MATAJCICH, | No. 2:21-cv-00911 CKD (SS) |
| Plaintiff, | |
| v. | ORDER |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1980, applied on September 10, 2018 for SSI, alleging disability beginning August 1, 2017. Administrative Transcript ("AT") 16, 33. Plaintiff alleged she was unable to work due to pulmonary hypertension, sleep apnea, asthma, COPD, thyroid issues, cirrhosis, lumbar stenosis, depression, PTSD, and anxiety. AT 78. In a decision dated October

1

22, 2020, the ALJ determined that plaintiff was not disabled.[1] AT 16-24. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since September 20, 2018, the application date.
>
> 2. The claimant has the following severe impairments: asthma with allergic rhinitis; cervical degenerative disc disease; lumbar degenerative disc disease; hepatic steatosis; obesity; metabolic syndrome; obstructive sleep apnea; gastroesophageal reflux disease with hiatal hernia; fibromyalgia; tremor; incontinence; post-traumatic stress disorder; major depressive disorder; and anxiety.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, and can stand and/or walk for approximately 6 hours and sit for approximately 6 hours, in an 8-hour workday, with normal breaks. The claimant cannot climb ladders, ropes and scaffolds and can occasionally climb stairs and ramps. The claimant can occasionally balance, stoop, kneel, crouch and crawl. She can occasionally reach overhead with the bilateral upper extremities. She can frequently handle and finger, bilaterally. The claimant should have only occasional exposure to wetness, humidity and atmospheric conditions and no exposure to extreme cold and extreme heat[.] The claimant can understand, remember and carry out simple, routine and repetitive instructions and tasks. The claimant should perform only low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties, occasional simple, work-related decision-making and no work on a moving conveyor belt. The claimant can have no public contact and occasional coworker and supervisor interaction. She must be permitted to wear discreet incontinence undergarments while at work.
>
> 5. The claimant is unable to perform any past relevant work.[2]
>
> 6. The claimant was born on XX/XX/1980, which is defined as a younger individual age 18-49, on the date the application was filed.
>
> 7. The claimant has at least a high-school education.
>
> 8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[3]
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since September 10, 2018, the date the application was filed.

AT 18-34.

////

////

////

---

[2] The ALJ noted that plaintiff had past relevant work as a medical biller, food server, dental assistant, and caregiver. AT 32.

[3] Relying on vocational expert testimony, the ALJ found that plaintiff could perform representative occupations such as routing clerk, merchandise worker, and mail clerk. AT 33-34.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred by failing to account for work-related limitations caused by plaintiff's incontinence; and (2) the ALJ erred by failing to account for work-related impairments caused by plaintiff's headaches.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

////

## ANALYSIS

### A. Incontinence

At the August 26, 2020 hearing, plaintiff testified that she had worked as a medical biller, waitress, dental assistant, and home health aide. AT 60-61. In 2016, she was working as a track coach when she stopped working in order to care for her infant niece. AT 61, 64. She testified that she "started getting sick" around that time; her alleged disability onset date was August 1, 2017. AT 61. Plaintiff testified that, among other health problems, she had chronic bladder and bowel incontinence that "affects me every day." AT 66. Plaintiff stated that "[i]t's gotten so severe that I literally poop myself two, three, four times a day. And I have problems with diarrhea." AT 66. Plaintiff testified that, while the cause of her chronic incontinence was unknown, it was exacerbated by stress or anxiety, and she had to wear adult diapers. AT 66-67. The ALJ asked plaintiff whether the diapers worked to absorb the waste products, and plaintiff testified that they worked "sometimes"; other times, "there's so much at one time that it still runs down my leg." AT 68-69. The ALJ summarized this testimony in her decision. AT 23, 25.

In her first claim, plaintiff asserts that the ALJ failed to account for work-related impairments caused by plaintiff's incontinence. The ALJ's residual functional capacity (RFC) provided that she could perform light work with physical, mental, and social limitations, and that she "must be permitted to wear discreet incontinence undergarments while at work." Plaintiff argues that

> such a narrow limitation . . . fails to account for all the practical ramifications of her incontinence, or, for that matter, of the undergarment itself. While an incontinence undergarment protects the worker's clothing and the employer's property (chairs, etc.) . . . *the upshot of her RFC is that Plaintiff is required to sit in her own waste until her next scheduled break.* . . . This ignores a variety of obvious realities related to sitting in human waste, both for Plaintiff and those around her: Plaintiff's emotional distress; her increased risk of skin rash and irritation; her increased risk of a bladder infection from exposure to bacteria; the smell of adult feces and urine in a working environment; the potential hazards related to accidents on the floor; damage to property, such as chairs; and how all of these might impact working relationships in a competitive employment setting.

(ECF No. 16-2 at 7; emphasis in original).

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Here, the ALJ found incontinence to be one of several severe impairments which "significantly limit the ability to perform basic work activities[.]" AT 19. However, the ALJ determined that plaintiff's "symptoms were not as debilitating as she claimed" and that her "testimony appeared to be marked by exaggeration regarding the severity of her symptoms." AT 24. Plaintiff does not challenge this adverse credibility finding (which applied to several aspects of her testimony) in a separate claim; rather, she argues that the ALJ erred in discounting her testimony about her chronic incontinence. (ECF No. 16-2 at 7-8.) Plaintiff asserts that record evidence supports her testimony about the nature and severity of this problem. (Id.)

The ALJ discussed the credibility of plaintiff's testimony about her incontinence-related symptoms, writing: "Although the medical evidence of record documents the claimant's work-up for incontinence, treatment records do not document the extreme degree of symptomatology as alleged by the claimant at the hearing.[4] The persuasiveness of the claimant's subjective complaints are diminished in light of her apparent exaggeration." AT 25.

The ALJ summarized the relevant evidence as follows:
- "In January 2017, the claimant began complaining of abdominal pain to primary care providers. . . . The claimant reported she had regular bowel movements daily in the

---

[4] Citing AT 511-524, 584-802, 803-823 (treatment records from 2017, 2018, and 2019).

morning, and she denied any difficulty." AT 26, citing AT 440.

- "In September 2018, the claimant complained of urinary frequency and urinary incontinence. However, she admitted that [these symptoms] were normal for 'her whole life' since she was sexually molested and had 'nerve issues' as it related to the pelvic area." AT 28, citing AT 673 (September 2018 treatment record where plaintiff presented for back pain and headache).
- "The claimant established care with Shasta Orthopedics in September 2018 due to complaints of lumbar pain and incontinence." AT 28, citing AT 803-821.
- "In February 2019, the claimant was advised that her spine was relatively unlikely to be causing the fecal incontinence that was the cause for her referral." AT 28, citing AT 109.
- "On January 31, 2019, the claimant was seen in the UC Davis Spinal Clinic due to worsening fecal incontinence in the setting of presumed lumbar stenosis. The claimant indicated it occurred primarily when changing position from sitting to standing when she realized she soiled herself. The claimant described her urinary incontinence as a sensation of urinary urgency that became more frequent since being on Lasix. . . . It was determined that the claimant's fecal incontinence and urinary urgency were unlikely related to the lumbar spine." AT 28, citing AT 809.
- "In September 2019, the claimant was seen for metabolic syndrome. . . . The claimant detailed one instance she thought she was done stooling, but upon getting up she had some bowel 'leakage.' . . . Work-up was ordered to help determine the etiology of the claimant's diarrhea." AT 30, citing AT 1052, 1041.

In sum, the ALJ reviewed the medical evidence pertaining to incontinence and found that "treatment records do not document the extreme degree of symptomatology" plaintiff testified to at the hearing. AT 25. Moreover, the ALJ made the following findings about plaintiff's credibility in general:

- "[T]he claimant's son detailed [her] daily activities to include the following: took her children to and from school; cared for a pet dog; cooked and prepared food daily;

7

performed housework (laundry, vacuuming, dusting, dishes), although some days she needed help; could drive 'perfectly fine'; went shopping once or twice a week . . . ; enjoyed walking and going to the dog park often; went out to the movies, coffee, and lunches, and went to church regularly.  These written statements were inconsistent with the claimant's testimony and subjective complaints[.]" AT 24, citing AT 247-254 (April 2019 third-party function report). ]

- "The record includes statements by the claimant's own provider suggesting the claimant was engaging in possible misrepresentation. . . . The persuasiveness of the claimant's subjective complaints are diminished in light of this apparent inconsistency."  AT 25, citing AT 467-468 (November 2017 physical therapy note stating that "[t]he fact that plaintiff is a housekeeper and works full-time is inconsistent with her complaints of hip, neck, and shoulder pain.").

- "[E]vidence suggests that the claimant had a history of being paid cash or otherwise for work that was not reported to the Social Security Administration or on tax returns. . . . This evidence . . . indicates that the claimant's daily activities have, at least at times, been significantly greater than the claimant has generally reported.  The claimant's apparent ability to work during the period of adjudication is inconsistent with her allegations of disabling functional limitations."  AT 25-26, citing AT 789 (June 2017 treatment note stating that plaintiff "cleans houses for a living and spends most of the day on her feet"); AT 469 (November 2017 treatment note stating: "The fact that she is a housekeeper and works full-time is inconsistent with her complaints of hip, neck, and shoulder pain."); AT 475 (December 2018 treatment note stating that plaintiff "cleans houses for a living"); AT 496 (December 2018 treatment note referring to plaintiff's job cleaning houses).

- "Despite the claimant's subjective complaints of incapacitating limitations, the claimant's activities of daily living have at times been greater than the claimant generally reported, including working full-time as a housekeeper and caring for multiple children in the home[.]"  AT 31.

Based on the foregoing, the ALJ found plaintiff to be exaggerating her symptoms, and the court finds no reason not to defer to the ALJ's credibility analysis. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995) (the ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons). The ALJ concluded that evidence that plaintiff worked full-time as a housekeeper and was able to perform a normal range of daily activities was inconsistent with her claims of debilitating incontinence; however, the ALJ credited plaintiff's testimony that she needed to wear an adult diaper, and this was reflected in the RFC.  The ALJ also credited the opinions of two medical consultants, Dr. L. Pancho and Dr. Kim Rowlands, both of whom reviewed the longitudinal record and opined that plaintiff could perform light work with some limitations; neither opined as to any limitations related to incontinence. AT 31, citing AT 85-86, 102-104.  In light of the above, the RFC regarding incontinence was adequately explained and grounded in substantial evidence.

### B.  Headaches

Plaintiff next claims that the ALJ erred by failing to account for work-related impairments caused by plaintiff's headaches.

At the August 2020 hearing, plaintiff testified that her main impairments were PTSD and edema.  AT 62.  She also testified to chronic incontinence and sleepiness requiring her to nap multiple times a day.  AT 65-68.  Plaintiff did not testify about headaches or any functional limitations due to headaches.  See AT 23 (summary of testimony as to physical symptoms).

The ALJ did not find plaintiff's headaches a severe impairment; rather, she found that plaintiff's headache symptoms "have been accounted for as symptoms of cervical degenerative disc disease, lumbar degenerative disc disease, and fibromyalgia." AT 29.  The RFC does not include any limitations related to headaches or light sensitivity.

Plaintiff asserts that the RFC does not incorporate the "numerous references to photophobia in the record" or evidence that plaintiff's headaches are related to neck movement. (ECF No. 16-2 at 10.)  Plaintiff cites an April 2019 doctor's visit in which she presented for headaches, describing them as severe and aggravated by bright lights and noise.  AT 584.

Plaintiff stated that these symptoms were relieved by over-the-counter medication.[5]  AT 584. Plaintiff argues that her headaches should have "result[ed] in limitations such as needing to rest in the dark." (ECF No. 16-2 at 11.)

In reviewing the medical record, the ALJ noted that plaintiff "complained of headaches, which appeared to be related to her neck pain. . . . The claimant reported relief of symptoms with over-the-counter pain medications, rest, manipulation, and gabapentin.  The claimant reported chiropractic treatment was helping with her back pain and headaches."  AT 27.  The ALJ also considered a March 2020 MRI of the cervical spine, which showed mild findings.  AT 29.  As noted above, the ALJ credited the opinions of the two consulting physicians, who found that plaintiff could perform light work; neither opined that there were any limitations related to headaches or photophobia.  AT 31, citing AT 85-86, 102-104.

Plaintiff has not shown reversible error as to the ALJ's failure to incorporate headache-related limitations in the RFC.  As above, the court finds that the RFC was adequately explained and grounded in substantial evidence.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 18**)** is granted; and

3. Judgment is entered for the Commissioner.

Dated:  November 7, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/matajcich911.ssi.ckd

---

[5] Plaintiff asserts in her brief that headaches "prevent her from driving"; however, this contradicts evidence that plaintiff took her children to and from school daily and went to doctor's appointments, the grocery store, and other places.  In his third-party function report, her adult son stated: "She can drive perfectly fine."  AT 250.

10